TRINA A. HIGGINS, United States Attorney (#7349)
BRYAN N. REEVES, Assistant United States Attorney (DC #994799)
CHRISTOPHER LIN, Trial Attorney, Dept. of Justice, Tax Division (NY #5028618)
BORIS BOURGET, Trial Attorney, Dept. of Justice, Tax Division (MD #2109080015)
Attorneys for the United States of America
111 South Main Street, Suite 1800 | Salt Lake City, Utah 84111
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ASHLEY JAMES ROBINSON,<br><br>Defendant. | Case No. 1:23-cr-00008-JNP<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Judge Jill N. Parrish |

## I. <u>INTRODUCTION</u>

Ashley James Robinson ("Robinson") evaded taxes on approximately $1.3 million dollars of income from 2013 to 2019. For more than two decades, Robinson was the CEO of Globus Relief ("Globus"), a Salt Lake City-based charity organization that claims to have distributed more than $1 billion in medical supplies to more than 143 countries. *See* Main Page, https://nonprofitmed icalsupply.org/ (last visited March 28, 2024). Leveraging his position, Robinson entered into a covert commission agreement with one of Globus' purported donors. Robinson received this unreported income in addition to the substantial salary he earned from Globus. Using the unreported funds, Robinson bought luxury vehicles, paid off the mortgage on his principal residence, and used the funds for other personal expenses. The Court should impose a sentence commensurate with Robinson's conduct and sentence him to 12 months and one day

of incarceration, followed by three years of supervised release that include a requirement that he repay $557,498.95 in restitution to the Internal Revenue Service.

## II. PROCEDURAL BACKGROUND

On March 23, 2023, Defendant Ashley James Robinson pleaded guilty to all counts of an Information charging him with four counts of tax evasion, in violation of 26 U.S.C. § 7201. ECF Nos. 1, 8. There is no plea agreement in this case. Sentencing is scheduled for April 18, 2024 at 1:00 PM.

## III. FACTS

Beginning in 1999, Ashley Robinson worked for Globus, a nonprofit organization based in Salt Lake City. PSR ¶ 62, ECF No. 26. Globus Relief's mission "is to unite non-profits to save lives and relieve the suffering of those who need basic medical supplies." *See* About Us page, https://nonprofitmedicalsupply.org/pages/who-we-are (last visited March 28, 2024). Robinson was the President and CEO of Globus Relief until his resignation in September 2021. PSR ¶ 62. Globus reported approximately $31 million in total support and revenue by the end of 2022. *See* Exhibit 1, Globus Relief Financial Statements and Independent Auditor's Report at 4.

### a. Unreported Income Received by Robinson from Mickle Pharma

In 2011, Robinson entered into a secret business partnership with Gurcharan "Jazzy" Singh. Among other endeavors, Singh operated a group of companies operating as Mickle Pharma ("Mickle"), a company in India that, among other things, manufactured pharmaceuticals. As part of his agreement with Robinson, Singh provided pharmaceuticals to Globus, giving the appearance that these medical supplies were legitimate donations. In reality, Robinson caused Globus to sell the medical supplies to a third-party, passing on the proceeds to Singh. Singh then

paid Globus an administrative fee and, unbeknownst to Globus, paid Robinson a commission totaling up to 10% of the total proceeds.

The emails below illustrate some of Singh's payments to Robinson:

**From:** Jazzy Singh <jazzysingh@micklepharma.com>
**Sent:** Friday, January 11, 2013 3:06 AM
**To:** ASHLEY ROBINSON
**Subject:** Re: Info

Ash - Hope you are doing well.

Here's the wire info,

just so it makes sense, please double verify.

total =

$1,553,561.28

at 5%
$77,678.06

previous wired
$**32,270.22**

**Tv**
**$**1,539.04

Total wired now,
$46,946.88

Please let me know if it makes sense.

Best,

Jazzy

/ /

/ /

/ /

**From:** Jazzy Singh <jazzysingh@micklepharma.com>
**Sent:** Thursday, April 06, 2017 1:31 PM
**To:** Robinson Ashley
**Subject:** Hey

Ash - Hope you are doing well.

Wire of $227309 was done.

Please keep a lookout, let me know when it's done.

Thanks

mickle.

Jazzy Singh
Website:http://www.MicklePharma.com
Email:jazzysingh@micklepharma.com
Skype:jazzymickle
Phone:(714) 770-6601
Los Angeles, CA 92807

Singh caused payments to be wired from Mickle accounts to at least two accounts, ending in number x8366 and x2146, held by Robinson in his individual capacity at America First Credit Union ("AFCU").

In addition, Robinson received payments from Mickle for consulting services. During a voluntary interview with IRS-CI, Robinson told investigators that he reported the payments for consulting on his income tax returns.

/ /

/ /

/ /

Email and bank records revealed that Robinson received the following payments from Singh and Mickle-affiliated entities:

| **Date** | **Recipient Account** | **Amount** |
|---|---|---|
| 1/11/2013 | AFCU x8366 | $46,794.81 |
| 9/11/2013 | AFCU x8366 | $50,015.00 |
| 9/25/2013 | AFCU x8366 | $5,549.00 |
| **2013 Total:** | | **$102,358.81** |
| 3/18/2014 | AFCU x8366 | $46,993.00 |
| 7/21/2014 | AFCU x8366 | $5,549.00 |
| **2014 Total:** | | **$52,542.00** |
| 5/28/2015 | AFCU x8366 | $110,082.09 |
| 8/6/2015 | AFCU x8366 | $128,759.71 |
| **2015 Total:** | | **$238,841.80** |
| 5/2/2016 | AFCU x8366 | $134,071.00 |
| 7/15/2016 | AFCU x8366 | $72,735.00 |
| 8/16/2016 | AFCU x8366 | $2,500.00 |
| 11/15/2016 | AFCU x8366 | $5,350.00 |
| **2016 Total:** | | **$214,656.00** |
| 4/7/2017 | AFCU x8366 | $227,289.00 |
| 5/15/2017 | AFCU x2146 | $10,000.00 |
| 6/12/2017 | AFCU x8366 | $151,519.00 |
| 9/18/2017 | AFCU x8366 | $23,980.00 |
| 10/4/2017 | AFCU x8366 | $34,980.00 |
| 10/13/2017 | AFCU x8366 | $25,000.00 |
| **2017 Total:** | | **$472,768.00** |
| 2/14/2018 | AFCU x8366 | $67,480.00 |
| 6/20/2018 | AFCU x2146 | $299,940.00 |
| 11/7/2018 | AFCU x2146 | $225,000.00 |
| **2018 Total:** | | **$592,420.00** |
| 6/14/2019 | AFCU x2146 | $322,709.00 |
| **2019 Total:** | | **$322,709.00** |
| **TOTAL AMOUNT SENT TO ROBINSON:** | | **$1,996,295.61** |

Robinson's tax filings show that he reported $666,523 in "other income" on his 2013 through 2019 tax returns, leaving a minimum of $1,329,773 in unreported income.

**b. Use of Unreported Funds for Personal Purchases**

i. Vehicle Purchases

Robinson used what he received from Mickle to buy various luxury vehicles. In August 2015, Robinson purchased a 2015 Land Rover Evoque, wiring the entire purchase price of $38,127 from the AFCU Account #8366 to Jaguar Land Rover Thousand Oaks in California.

In December 2015, Robinson bought a 2015 Maserati Q4 for $77,330.13, paying via a cashier's check from AFCU.

THIS DOCUMENT HAS AN ARTIFICIAL WATERMARK PRINTED ON THE BACK. THE FRONT OF THE DOCUMENT HAS A MICRO-PRINT BORDER AND HOLOGRAM. ABSENCE OF THESE FEATURES WILL INDICATE A COPY

AMERICA FIRST CREDIT UNION
America First Federal Credit Union
P.O. Box 9199 • Ogden, Utah 84409

OFFICIAL CHECK
LOAN PROCEEDS

5-709/110 № 01614004

DATE 12/28/15
Void After 90 Days

PAY Seventy Seven Thousand Three Hundred Thirty Dollars And Thirteen Cents

***$77,330.13***

TO THE ORDER OF MASERATI OF SALT LAKE CITY
808 S MAIN ST
SALT LAKE CITY, UT 84101

Drawer: Moneygram Payment Systems
P.O. Box 9476 Minneapolis MN 55480
Drawee: BNY Mellon Everett, MA

ROBINSON, ASHLEY ILS010 [redacted]
Memo

ENDORSED [redacted] 0049" [redacted] 7811"

Robinson obtained a loan from AFCU for this purchase and beginning in January 2016, made monthly payments of $1,390 from the AFCU x8366 Account.

**Loan 2**

Statement Period: December 02, 2015 - December 31, 2015

| PAYMENT DUE DATE | SCHEDULED PAYMENT | PAST DUE AMOUNT | TOTAL AMOUNT DUE | DAILY PERIODIC RATE | ANNUAL PERCENTAGE RATE |
|---|---|---|---|---|---|
| 01/28/2016 | 1,390.00 | .00 | 1,390.00 | .00819% | 2.990% |

| Post Date | Effective Date | Transaction Description | Transaction Amount | Interest Charge | Principal | Loan Balance** |
|---|---|---|---|---|---|---|
| | | BEGINNING BALANCE | | | | .00 |
| 12/28 | | NEW LOAN ESTABLISHED | 77,330.13 | | 77,330.13 | 77,330.13 |
| | | ENDING BALANCE | | | | 77,330.13 |

Robinson also purchased vehicles on behalf of others. In June 2017, he purchased an Audi A6 Sedan for a member of the Globus leadership team with whom he had a romantic relationship. The total sale price was $51,719. After a trade-in allowance,[1] Robinson paid the remaining amount due of $20,879.63 via a cashier's check drawn from the AFCU x8366 Account.

**America First Credit Union** Nº 148001050

| PAYEE INFORMATION | ID DESCRIPTION / NO. |
|---|---|
| Audi Lehi | X UT DL [redacted]6087 exp:202003 |
| | MEMBER NAME |
| | DLICENSE:Ashley robinson |

| DATE | ACCOUNT NO | SFX | TRAN. CODE | AMOUNT OF CHECK | FEE | BALANCE | FREQ. | METHOD | CHECK PREPARED BY |
|---|---|---|---|---|---|---|---|---|---|
| 06/13/17 | XXXXXX8366 | 001 | | $20,879.63 | $0.00 | | | | 148 003 ST |

| MO. PAYMENT | NEW NOTE NUMBER | SFX | LOAN TYPE | RATE | DI | AGREED PAYMENT | PAYMENT INDEX | PUR-SEC CODE | AMOUNT OF LOAN | CHECK RECEIVED BY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| | |
|---|---|
| Beginning Balance: | $106,910.82 |
| Withdrawal Amount: | $20,879.63 |
| Fee: | $0.00 |
| Withholding: | $0.00 |
| Cash Adv Fee: | $0.00 |
| Ending Balance(Share Savings 1): | $86,031.19 |

**IMPORTANT NOTICE: HANDLE THIS CHECK AS YOU WOULD CASH.** You cannot place a "Stop Payment" on this check. There are limited situations in which this check can be replaced if it is lost, stolen or destroyed.

DETACH AND RETAIN FOR YOUR RECORDS

OFFICIAL CHECK

Cashier's Check

5-709/110 Nº 148001050

3243

DATE 06/13/17

Void After 90 Days

PAY Twenty Thousand Eight Hundred Seventy Nine Dollars And Sixty Three Cents

$20,879.63

TO THE ORDER OF Audi Lehi

Drawer: Moneygram Payment Systems P.O. Box 9476 Minneapolis MN 55480

Drawee: BNY Mellon Everett, MA

MEMO: ____________

On June 24, 2017, Robinson purchased a Mercedes CLA sedan for a total sales price of $67,142.88. Robinson financed the entire purchase, agreeing to make 72 payments of $932.54

[1] It is not clear whether the trade-in vehicle belonged to Robinson.

beginning on August 8, 2017. Bank records show that Robinson made these payments using the AFCU x8366 Account beginning on October 6, 2017.[2]

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) |
|---|---|
| ASHLEY J ROBINSON<br>[redacted]<br>FARMINGTON, UT 84025<br>DAVIS | N/A<br>N/A<br>N/A |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By sig on credit under the agreements on the front and back of this contract. You agree to pay the contract) the Amount Financed and Finance Charge in U.S. funds according to the payment sche a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number |
|---|---|---|---|
| NEW | 2018 | MERCEDES-BE CLA | WDDSJ5CB9JN516027 |

**FEDERAL TRUTH-IN-LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 0.00 is |
|---|---|---|---|---|
| 2.99 % | $ 5,824.15 | $ 61,318.73 | $ 67,142.88 | $ 67,142.88 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 932.54 | Monthly beginning 08/08/17 |

| | | | | |
|---|---|---|---|---|
| 10/06 | AUTOMATIC WITHDRAWAL, MBFS | WEB PAY | WEB(R ) | 932.54- |

Finally, in November 2018, Robinson paid off the remaining mortgage on his personal residence using AFCU Account x2146, one of the two accounts Robinson used to receive commission payments from Mickle. On November 8, 2018, Robinson drew a cashier's check totaling $182,317.60 which he tendered to Key Bank to pay off the rest of his mortgage:

[2] "MBFS" is an abbreviation for Mercedes Benz Financial Services.

**Transaction Details:** **Date: 11/08/18**

| | | | |
|---|---|---|---|
| Transaction ID: | 19815117032546 | Amount: | $182,317.60 |
| Account Number: | XXXXX2146 | Total Withdrawal: | $182,317.60 |
| Type of Instrument: | Cashier's Check | Checking 9 Balance: | $109,173.80 |
| Instrument Number: | 113065901 | | |

(Page 1 of )

THIS DOCUMENT HAS A TRUE WATERMARK AND HOLOGRAM ABSENCE OF THESE FEATURES WILL INDICATE A COPY

AMERICA FIRST CREDIT UNION
America First Federal Credit Union
P.O. Box 9199 • Ogden, Utah 84409

**Official Check**
Cashier's Check

5-709/110 **No. 113065901**

Date: 11/08/18
Void After 90 Days

PAY One Hundred Eighty-Two Thousand Three Hundred Seventeen Dollars And 60/100 Cents ***$182,317.60***

TO THE ORDER OF KEY BANK

Payable through BNY Melon Everett, MA

MEMO: PAYOFF MORTGAGE

[redacted] 5901 [redacted] 1258

On March 23, 2023, Robinson admitted to this Court that he concealed approximately $1.3 million from the IRS. In his statement in advance of his plea, ECF No. 11, he agreed that the amount of restitution he owed was $485,982. *Id*. at 4. This amount was calculated based on the amount of tax he owed for not reporting approximately $1.3 million dollars he received from 2013 to 2019. In addition to his $240,000 per year salary Robinson received as CEO of Globus, Robinson received, on average, nearly $300,000 per year from this secret deal with Singh.

## IV. <u>COMPUTATION OF THE ADVISORY GUIDELINES RANGE</u>

While the Sentencing Guidelines are no longer mandatory, they remain key to accomplishing the Sentencing Reform Act's goal of "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States v. Booker*, 543 U.S. 220, 252 (2005); *see also United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005) ("[I]t is important to

bear in mind that [*Booker*] and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge."). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines range is thus "the lodestar" that "anchor[s]" the district court's discretion. *Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016) (quoting *Peugh v. United States*, 569 U.S. 530, 548 (2013) (internal quotation marks omitted)).

**a. Base Offense Level**

In this case, the Court should apply Section 2T1.1 of the Guidelines. The applicable Guidelines Manual is the November 1, 2023 edition. After determining the applicable section of the Guidelines, the Court must calculate the defendant's base offense level. In a tax case, the base offense level is calculated using the actual or intended tax loss caused by the defendant's conduct. The tax loss caused by Robinson's conduct is as follows:

| | |
|---|---|
| Tax Year 2013 (Relevant Conduct): | $19,421.00 |
| Tax Year 2014 (Relevant Conduct): | $17,811.00 |
| Tax Year 2015 (Relevant Conduct): | $21,785.00 |
| Tax Year 2016 (Count 1) | $56,532.00 |
| Tax Year 2017 (Count 2): | $151,590.00 |
| Tax Year 2018 (Count 3): | $172,250.00 |
| Tax Year 2019 (Count 4): | $46,772.00 |
| **Total:** | **$485,982.00** |

In calculating the offense level, U.S.S.G. §§ 2T1.1(a)(1) and 2T4.1(G) provide that a tax crime involving a tax loss greater than $250,000 but less than $550,000 results in a base offense level of 18.

**b. Adjustments to the Base Offense Level**

Having calculated the base offense level, the Court should proceed to determine whether that offense level should be adjusted based on additional factors.

First, while there is no plea agreement in this case, Robinson accepted responsibility for his actions and pleaded guilty to all counts contained in the Information. The United States therefore recommends that Robinson's base offense level be reduced by two points under U.S.S.G. § 3E1.1(a). Assuming Robinson continues to accept responsibility for his actions within the meaning of U.S.S.G. §3E1.1(a), the United States anticipates moving for an additional one-point reduction under § 3E1.1(b).

Second, Probation recommends that Robinson be given a two-point enhancement under U.S.S.G. § 2T1.1(b)(1), which provides that this enhancement should apply when "the defendant fail[s] to report or to correctly identify the source of income exceeding $10,000 in any year from criminal activity." On January 18, 2024, the United States objected to this enhancement. The PSR states that this enhancement was included because "[t]he defendant failed to report income in excess of $10,000 for each year (2013-2019) listed in the Offense Conduct." *Id.* This reading of § 2T1.1(b)(1), however, is misplaced. While Robinson did commit tax evasion, that alone is insufficient to apply this enhancement absent a showing that the *source* of the unreported income came from criminal activity. While it appears that Globus was unaware of Robinson's commission agreement with Singh, there is insufficient evidence to conclude that the source of these commissions was criminal in nature.

Finally, the United States is not presently aware of any prior convictions that would increase Robinson's criminal history points. Therefore, the United States further recommends that he be given the two-point downward adjustment for offenders with zero criminal history points under

§ 4C1.1(a)(1).

**c. Robinson's Advisory Guidelines Range**

Using U.S.S.G. § 2T1.1, the United States calculates the advisory Guidelines range as follows:

| | |
|---|---|
| Base Offense Level = | + 18 |
| Acceptance of Responsibility= | - 2 |
| Timely Plea= | - 1 |
| Zero-Point Offender= | - 2 |
| **Total Offense Level=** | **13** |

Based on a total offense level of 13 and a Criminal History Category I, Robinson's advisory Guidelines sentence is 12 to 18 months (Zone D) and a fine of $5,500 to $55,000.

## V. SENTENCING CONSIDERATIONS

After making the initial Guidelines calculation, the Court must consider the factors outlined in 18 U.S.C. § 3553(a) and impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). The Could must also consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the

Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *Id.*

In addition, the Court must consider the need to (1) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for that offense; (2) afford adequate deterrence; (3) protect the public from further crimes of the defendant; and (4) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

As discussed below, the advisory guidelines range and the § 3553 factors warrant a custodial sentence. The United States recommends that Robinson be sentenced of 12 months and one day in prison, which is at the low end of the applicable Guidelines range.

**a. The Nature and Circumstances of the Offense**

From at least 2013 through 2019, Robinson engaged in a course of conduct intended to exploit his position as the CEO of a large nonprofit organization to enrich himself and conceal this income from tax authorities to evade the assessment of income tax on the funds he received from a commission agreement with Mickle. While the United States has not alleged that Robinson embezzled these funds from Globus, he kept his agreement with Mickle secret, likely knowing that such arrangements would be viewed unfavorably by coworkers, donors, and charity watchdog organizations. These payments were substantial; over six years, Robinson received nearly $2 million. This amount *exceeds* the approximately $1.6 million in salary he received from Globus during that same time period.

Unlike other criminal tax cases, Robinson was not using the unreported funds to keep a family business afloat, make ends meet, or provide necessities for his family. Instead, he went on a spending spree. He bought multiple vehicles for himself, his mistress, and his family members.

He also paid off the mortgage on his personal residence. Robinson's criminal conduct is not the result of a one-time lapse of judgment. For several years, he abused his position[3] as the head of a large nonprofit to enrich himself and live beyond his means.

**b. The History and Characteristics of Robinson**

Nothing in Robinson's personal history could credibly have led him to commit his offenses. He is university educated, was the CEO of a large nonprofit for more than two decades and received a reported salary of $240,000 per year. PSR ¶ 62. Despite pleading guilty to multiple tax offenses, Robinson continues to find work as a freelance consultant. *Id.* at ¶ 63. In other words, personal greed was the primary motivator for the crimes he committed.

**c. The Need for the Sentence Imposed to Reflect the Serious of the Offense, Promote Respect for the Law, Provide Just Punishment, Promote Deterrence, and Protect the Public from Further Crimes of Robinson**

Those who commit tax crimes and other white-collar offenses "may be particularly susceptible to general deterrence because '[d]efendants in white-collar crimes often calculate the financial gain and risk of loss, and white-collar crime therefore can be affected and reduced with serious punishment." *United States v. Sample*, 901 F.3d 1196, 1200 (10th Cir. 2018) (quoting *United States v. Kulhman*, 711 F.3d 1321, 1329 (11th Cir. 2013)). Indeed, in committing such crimes, white-collar defendants "act rationally, calculating and comparing the risks and rewards before deciding whether to engage in criminal activity." *United States v. Brown*, 880 F.3d 399, 405 (7th Cir. 2018).

---

[3] The Tenth Circuit takes a minority approach to the abuse of position of trust enhancement under U.S.S.G. § 3B1.3, requiring a showing that the defendant hold a position of trust "in relation to the victim of the offense." *United States v. Guidry*, 199 F.3d 1150, 1160 (10th Cir. 1999). The sole victim in this case is the IRS. The ruling in *Guidry* notwithstanding, this Court may still consider Robinson's abuse of his role as CEO of Globus as part of the nature and circumstances of his offense under § 3553(a).

The U.S. Sentencing Commission recognizes that "[t]ax offenses, in and of themselves, are serious offenses." § 2T1.1 cmt. background. The sentencing guidelines were established to "reduce disparity in sentencing for tax offenses" and reduce "the number of purely probationary sentences." *Id.* Indeed, "because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying [the Guidelines]." U.S.S.G. 2T1, Introductory Commentary.

Criminal tax enforcement would be significantly undermined if the punishment for significant tax fraud was only an order to pay money back, perform community service, or probation. That is no deterrence. Only a custodial sentence can deter substantial, premediated economic crime. *See United States v. Morgan*, 635 F. App'x 423, 450 (10th Cir. 2015) ("General deterrence comes from a probability of convictions and *significant consequences*. If either is eliminated or minimized, the deterrent effect is proportionately minimized.") (emphasis added); *United States v. Edwards*, 595 F.3d 1004, 1021 (9th Cir. 2010) (Bea, J. concurring and dissenting) ("It is precisely at this point—when the thief of above-average education and wit is deciding whether to do the deed—that reflection on probable prison time—general deterrence—can have an effect.").

One congressional purpose in enacting 18 U.S.C. § 3553 was to ensure that serious white-collar crimes were more likely to be punished by imprisonment. *See* S. REP. 98-225, 76, 1984 U.S.C.C.A.N. 3182, 3259. Because economic and fraud-based crimes are "more rational, cool, and calculated than sudden crimes of passion or opportunity," these crimes are "prime candidate[s] for general deterrence." Stephanos Bibas, *White–Collar Plea Bargaining and Sentencing After Booker*, 47 Wm. & Mary L. Rev. 721, 724 (2005). Defendants committing economic crime often calculate the financial gain and risk of loss, and white-collar crime

therefore can be affected and reduced with serious punishment. *Martin*, 455 F.3d at 1240 (11th Cir. 2006); 18 U.S.C. § 3553(a)(2)(B).

The United States tax system relies on voluntary compliance, and general deterrence is an essential means of minimizing the ever-increasing amount of money estimated to be lost each year through tax fraud. *See United States* v. *Ture*, 450 F.3d 352, 357 (8th Cir. 2006) ("The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system."). The IRS estimates that only 83.1% of individuals are compliant, leaving a yearly tax gap of over $428 billion in unreported and uncollected taxes. *See* IRS, *Tax Gap Estimate for Tax Years 2014-2016* available at https://www.irs.gov/pub/irs-pdf/p1415.pdf (August 2022). "Studies have shown that salient examples of tax-enforcement actions against specific taxpayers, especially those that involve criminal sanctions, have a significant and positive deterrent effect." Joshua D. Blank, *In Defense of Individual Tax Privacy*, 61 Emory L.J. 265, 321 (2011). These studies emphasize the impact that noncompliance with the tax code has on the United States Treasury and the deterrent impact prison sentences have on other potential tax cheats.

Hundreds of billions of dollars are lost annually because people like Robinson—who otherwise benefit from all that taxes bring, such as schools, paved roads, transit systems, health care, and retirement security—exploit a tax system that assumes that taxpayers are being truthful. Individuals like Robinson exploit this assumption in order to fraudulently enrich themselves. Meaningful sentences must be given in cases such as Robinson's so that others are forewarned of the consequences for engaging in such complex, long-running tax crimes.

A sentence below the applicable guidelines range here would undercut Section 3553(a)'s goal to promote respect for the law and increase deterrence. The United States cannot ensure

compliance with the Internal Revenue Code if the public believes there are no meaningful repercussions for defrauding the public fisc. Robinson's crimes were not committed as part of a brief lapse of judgment; they were committed over several years through consistent and repeated acts of fraud.

Non-custodial punishments should be reserved for the least serious offenses—not those resulting in a near $500,000 loss to the United States and its taxpayers. And while Robinson deserves credit for deciding to plead guilty and admit his wrongdoing, that credit is reflected in the reduction to his base offense level, and the United States's recommendation that the Court impose a low-end sentence without any prior agreement to do so.

**d. The Need to Avoid Unwanted Sentencing Disparities**

One of the principal purposes in establishing the Sentencing Guidelines was to create "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar criminal offenders." U.S.S.G. Ch. 1., Pt. A(1)(3). Thus, one way to ensure avoiding unwarranted sentencing disparities is to sentence within the Guidelines range. "Under pre-guidelines practice, roughly half of all tax evaders were sentenced to probation without imprisonment, while the other half received sentences that required them to serve an average prison term of twelve months." *Id.* § 2T1.1 cmt. background. Accordingly, the tax section of the Guidelines "is intended to reduce disparity in sentencing for tax offenses and to somewhat increase average sentence length. As a result, the number of purely probationary sentences will be reduced." *Id.* § 2T1.1 cmt. background.

The United States Sentencing Commission's Judiciary Sentencing Information ("JSIN") tool compiles national sentencing outcomes during FYs 2018–2023 using an offender's primary guideline, final offense level, criminal history category, and resulting guideline range of

imprisonment. According to JSIN, criminal tax offenders such as Robinson, whose primary offense guideline was § 2T1.1, final offense level was 15[4], and criminal history category was I, shows that 62% of those offenders were sentenced to prison. *See* Export of Result from JSIN, Exhibit 2. Of those that were sentenced to prison, the average and median length of those prison sentences were each 11 and 12 months, respectively. The sentence recommended by the United States matches the median sentence given to defendants comparable to Robinson. This is despite the fact that the tax loss caused by Robinson is much higher than the average criminal tax defendant. For Fiscal Year 2022, the median loss caused as part of tax offenses was $301,009. *See* U.S. Sentencing Comm'n, *Quick Facts Tax Fraud Offenses* available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Tax_Fraud_FY22.pdf.

Gurcharan Singh was also prosecuted in the Central District of California. He failed to disclose the income he had earned from his arrangement with Globus and Robinson. On August 19, 2022, Singh pleaded guilty to two counts of filing false income tax returns, in violation of 26 U.S.C. 7206(1). *See United States v. Singh*, No. 8:22-cr-00075, ECF Nos. 1, 3, 16. Singh entered into a plea agreement and agreed to cooperate in the investigation and prosecution of Robinson. Like Robinson, Singh's resulting offense level was 13.[5] The Court in that case accepted the United States's sentencing recommendation and sentenced Singh to 12 months and one day of incarceration. According to BOP records, Singh served his sentenced was released from custody on March 4, 2024.

---

[4] The JSIN data compiles information prior to the enactment of the zero-point offender reduction under § 4C1.1. If not for this reduction, Robinson's total offense level would be 15, so the JSIN data for offenders with a level of 15 are more similarly situated to Robinson than those who received an offense level of 13 during FYs 2018-2022.

[5] Singh's total offense level was reduced from 19 to 13 under § 5K1.1.

While the Court must consider each defendant's individuals culpability and circumstances, the facts of both this case and the Singh case are similar.[6] Like Robinson, Singh failed to report the income he received as part of his agreement with Robinson. Singh's tax loss was higher (approximately $2.5 million), but he agreed to cooperate against Robinson and to disclose this cooperation to Robinson's counsel. Presumably, Sing's cooperation factored into Robinson's decision to enter an open plea to the Information. Sentencing Robinson to a probationary or non-custodial sentence would create a sentencing disparity between two defendants engaged in similar conduct as part of a common transaction and who received the same total offense level under the Guidelines.

## VI. RESTITUTION

The United States is seeking restitution for the actual loss caused by the counts of convictions as well as prejudgment interest. Restitution is totaled as follows:

| Count (Tax Year) | Tax Owed on Unreported Income | Interest (Calculated through 4/18/24) | Total Tax and Interest Owed |
|---|---|---|---|
| Count 1 (2016) | $56,532.00 | $21,973.42 | 78,505.42 |
| Count 2 (2017) | $151,590.00 | $50,860.64 | $202,450.64 |
| Count 3 (2018) | $172,250.00 | $47,609.02 | $219,859.02 |
| Count 4 (2019) | $46,772.00 | $9,910.87 | $56,683.87 |
| **Total:** | | | **$557,498.95** |

[6] While a felony, filing false tax returns is generally considered to be a lesser tax offense, carrying a lower statutory maximum period of incarceration (three years) than tax evasion (five years). *Compare* 26 U.S.C. 7206(1) *with* 26 U.S.C § 7201. Under § 7206(1), the Government need only prove that a defendant willfully subscribed a false tax return. In comparison, tax evasion requires proof that a defendant engaged in at least one affirmative act of evasion.

In a Title 26 criminal case, the Court lacks authority to order restitution as a freestanding part of its sentence. *United States v. Geddes*, 71 F.4th 1206, 1212 (10th Cir. 2023) (reversing "imposition of restitution [in a Title 26 case] to the extent it was ordered to be paid outside the term of supervised release."). But the Court may order restitution as a condition of supervised release. 18 U.S.C. §§ 3563(b), 3583(d). Restitution in a Title 26 case is also provided under the Guidelines. U.S.S.G. § 5E1.1(a)(2).

Ordering prejudgment interest as part of restitution is necessary to make the IRS whole. *See United States v. Patty*, 992 F.2d 1045, 1050 (10th Cir. 1993) ("Prejudgment interest reflects the victim's loss due to his inability to use the money for a productive purpose, and is therefore necessary to make the victim whole."); *see also United States v. Adams*, 955 F.3d 238, 251–52 (2d Cir. 2020) ("[P]rejudgment interest is part of the United States's loss when delinquent taxes are not timely paid, [and] the district court properly included accrued interest in the restitution amount."). Robinson made payments towards his expected restitution on February 14, 2024, and March 26, 2024, totaling $250,000 and $303,889.85, respectively.[7] Interest on unpaid taxes is set by statute. *See* 26 U.S.C. §§ 6601, 6621. To allow the IRS to make an appropriate restitution-based assessment, the Court should order Robinson to pay the full amount of restitution owed ($557,498.95) and then direct the Clerk to immediately apply the payments made towards that amount. A detailed breakdown of the IRS's interest and restitution calculations is attached as **Exhibit 3**.

[7] These payments were made to the Clerk of Court and are being held by the Court pending sentencing. ECF No. 28, 29.

## VII. CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court should sentence Defendant Ashley Robinson to 12 months and one day of incarceration, to be followed by three years of supervised release. As a condition of his supervised release, the Court should order Robinson to pay $557,498.95 in restitution.

Dated: April 11, 2024

TRINA A. HIGGINS
United States Attorney

/s/
BRYAN N. REEVES
Assistant United States Attorney
CHRISTOPHER LIN
BORIS BOURGET
Trial Attorneys
United States Department of Justice Tax Division
Western Criminal Enforcement Section